IN THE UNITED STATES DISTRICT COURT
FOR THE __NORTHERN__ DISTRICT OF __FLORIDA__
_____ DIVISION

STEPHANIE Y. GEORGE
Petitioner/Defendant

v.                                    Crim. Case No: 3:96CR00078-002

UNITED STATES OF AMERICA,
Plaintiff/Respondent

_____/

MOTION FOR MODIFICATION OR REDUCTION OF SENTENCE BASED UPON
A RETROACTIVE GUIDELINE AMENDMENT, CONCERNING COCAINE BASE
("CRACK") AND CERTAIN CRIMINAL HISTORY RULES THAT HAVE THE
EFFECT OF LOWERING GUIDELINE RANGE AND TERM OF IMPRISONMENT
PURSUANT TO 18 U.S.C. §3582(c)(2) and §1B1.10(c)

COMES NOW into court the Petitioner herein, STEPHANIE GEORGE

_____ appearing in and of her own behalf as a pro se

litigant, and respectfully moves this Honorable Court pursuant to

18 U.S.C. §3582(c)(2) and §1B1.10(c) of the United States Sentenc-

ing Guideline to modify thus reducing an already imposed sentence

based upon the retroactive Amendment to §2D1.1 of the United

States Sentencing Guideline effective March 3, 2008; specifically

Amendment 706, as amended by 711, pertaining to offenses involving

cocaine base 'crack', and Amendment 709, clarifying certain Criminal

History Rules that have the effect of lowering the guideline range.

The Commissioner has listed in §1B1.10(c) to include Amendment

706, as amended by 711, as the guideline amendments that the courts

may apply retroactively to previously sentenced defendants under

18 U.S.C. §3582(c)(2). That statute provides that:

"In case of the defendant who has been sentenced to a term

-1-

of imprisonment based on a sentencing range that has
subsequently been lowered by the Sentencing Commission
pursuant to 28 U.S.C. §994(o), upon the motion of the
defendant or the Director of Prisons, or on its own
motion, the court may reduce the term of imprisonment,
after considering factors set forth in section §3553
(a) to the extent that they are applicable policy
statements issued by the Sentencing Commission".
and
28 U.S.C. §994(u), §1B1.10 which guides the court as
to the amount by which a sentence may be reduced under
18 U.S.C. §3582(c)(2), subsection (b) of §1B1.10 states:

"In determining whether to what extent a reduction in
the term of imprisonment is warranted for a defendant
eligible for consideration under 18 U.S.C. §3582(c)(2),
the court should consider the term of imprisonment that
it would have imposed had the Amendment(s) to the guide-
lines listed in subsection (c) been in effect at the
time the defendant was sentenced..."

### STATEMENT OF THE CASE
### RELEVANT FACTS

Petitioner in the above number criminal case was sentenced

by this Honorable Court on or about ___May 5, 1997___ ,

for a violation of ___21 U.S.C. §846; Conspiracy to Possess with___

Intent to Distribute Cocaine Base ___.

Petitioner was sentenced by this Honorable Court to a term

of ___Life___ months imprisonment, at Offense Level ___38___, with a

Criminal History Score of ___6___, Category ___VI___; to be

followed by a term of Supervised Release of ___10___ years.[2]

Petitioner is currently incarcerated and is serving her sent-

ence at the Federal Correctional Institution, Tallahassee, Florida

[See Judgment of Committment herein attached as "Exh. A"].

Any detailed or extended statement of the facts of the case

would be improper and unavailing, on the grounds that Petitioner's

instant motion for sentence reduction is as a matter of law, a

continuation of the criminal case and is not a civil post-

-2-

conviction relief pleading. See e.g. <u>United States v. Fair,</u>
326 F 3d 1317 (11th Cir., 2003), followed by the overwhelming
sister circuits.

Therefore, Petitioner herein does not seek to introduce new
evidence or to argue or litigate the facts of the case. To the
contrary, Petitioner's instant Motion pursuant to 18 U.S.C. §3582
(c)(2) seeks a reduction of her term of imprisonment as a result
of an intervening, post-sentencing change in the United States
Sentencing Guideline Drug Quantity Table and Criminal History
calculation [hereinafter "USSG" or the "Guideline"]. However,
the current Advisory Guideline applies.

I.    CRACK COCAINE AMENDMENT TO §2D1.1 (DRUG QUANTITY TABLE) OF
      THE SENTENCING GUIDELINES (AMENDMENT 706)

On May 1, 2007, pursuant to 28 U.S.C. §994(a) and (p) the
United States Sentencing Commission, [hereinafter] USSG or "The
Commission" submitted to the United States Congress proposed
changes <u>inter alia</u>, Amendment 706 to improve crack cocaine sentences
which would be a clear, notwithstanding modest step towards
reducing the harsh and unjustifiable disparities between powder
cocaine and "crack" by adjusting downward the base offense level
assigned to each threshold quantity of crack above and below the
mandatory minimum threshold by two levels. The amendment also
includes a mechanism to determine a combine base offense level
in an offense involving crack cocaine and other controlled sub-
stances thus reducing Petitioner's total offense level from level
    38    to level    36    .

"The Commission identified as a policy <u>priority</u> for

amendment cycle ending May 1, 2007, "continuation of its work with congressional, executive and judicial branches of the government and other interested parties on cocaine sentencing policy, "including re-evaluating the Commission's 2002 report to Congress, <u>Cocaine and Federal Sentencing Policy</u>. As a result of the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 21 U.S.C. §841(b)(1) requires a five-year mandatory minimum penalty for a first time trafficking offense involving 50 grams or more of crack cocaine or 5,000 grams or more of powder cocaine. <u>Because 100 times more powder cocaine than crack cocaine is required to trigger the same mandatory minimum penalty</u>, this penalty structure is commonly referred to as the "100 to 1 Drug Quantity Ratio." (See Amendments to the Sentencing Guideline, pp. 45-46) [emphasis added].

Clearly, the Sentencing Commission recognizes the policy priority which should be accorded the disparities surrounding 100:1 drug quantity ratio in cocaine sentencing. Petitioner respectfully submits that this Honorable Court will accord the same or similar priority status in ruling upon Petitioner's instant motion for a reduction in sentence to or below the lowest end of the guideline range considering the sentencing disparity for crack and cocaine powder.

II.   BASED UPON THE SUPREME COURT'S BOOKER DECISION ABOLSIHING THE MANDATORY SENTENCING GUIDELINES IN ALL CONTEXTS THE BOOKER ADVISORY GUIDELINES APPLY TO PETITIONER'S INSTANT §3582(c)(2) MOTION FOR SENTENCE REDUCTION, THUS EMPOWERING THIS HONORABLE COURT TO CONSIDER THE §3553(a) FACTORS, CALCULATE A NEW GUIDE-LINE RANGE AND RESENTENCE PETITIONER ACCORDINGLY.

This Honorable Court in resentencing Petitioner herein, pursuant to this instant 18 U.S.C. §3582(c)(2) to account for a post-sentencing U.S. Sentencing Guidelines amendment that reduces the applicable range for punishment, must apply the Guidelines as advisory, even though the old mandatory Guidelines were in effect at the time of Petitioner's original sentencing in this Court.

-4-

On December 10, 2007 in the case of Kimbrough v. United States, 552 U.S. _____ (2007), the United States Supreme Court in an opinion delivered by Justice Ginsburg held that "...under United States v. Booker, 543 U.S. 220 (2005) the cocaine Guidelines, like all other guidelines are advisory only, and that the Fourth Circuit Court of Appeals erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guideline range in the array of factors warranting consideration. The judge may determine, however, that in the particular case, a within-Guideline sentence is "greater than necessary" to serve the objectives of sentencing. 18 U.S.C. §3553(a) (2000 ed and Supp.V). In making that determination, the judge may consider the disparity between' the Guideline treatment of crack and powder cocaine offenses."

Based on the above, this court has the jurisdictional authority to resentence defendants below the guideline range with consideration not limited to the guideline range but other statutory concerns as well including the need to avoid unwarranted sentencing disparity and a sentence not greater than necessary under the starndard of reasonableness 18 U.S.C. §3553(a).

In United States v. Hicks, 472 F 3d 1167 (9th Cir., 2007), the Court of Appeals for the Ninth Circuit held that where, as here, a defendant filed a motion to reduce his sentence pursuant to 18 U.S.C. §3582(c)(2), which permits a district court to resentence a defendant whose sentencing range has been lowered by the Sentencing Commission pursuant to 18 U.S.C. §994(o), the Guidelines must be applied in an advisory manner. According to

the Ninth Circuit's analysis, "a mandatory system is no longer an open choice", as a result of the Supreme Court's decision in United States v. Booker, 543 U.S. at 263.  Clearly, this Court, in resentencing Petitioner, has the discretion, pursuant to the now advisory Guidelines, to consider the factors set forth in §3553(a), and calculate a new Guideline range and issue a new sentence, accordingly.

III.   AMENDMENT TO CHAPTER 4A1.1 AND 2 OF THE SENTENCING GUIDELINE

On May 1, 2007, the United States Sentencing Commission also sent to the United States Congress proposed changes to modify two areas of Chapter Four (4) "Criminal History Rules" (Chapter 4A1.1 and 2) in the Sentencing Guidelines specifically-Amendment 709 which included the counting of Multiple Prior Sentences and the Use of Misdemeanor and Petty Offenses in determining a defendant's criminal history score and when they are counted.

(1).   Counting of Multiple Prior Sentences: After hearing from different practitioners and through public hearings, the Commissioner concluded that rules at subsection (a)(2) of §4A1.2 pertaining to definitions and instructions for computing criminal history and application note 3 of §4A1.2 are too complex and lead to confusion.  Moreover, a significant amount of litigation has arisen concerning application of the rules, and circuit conflicts have developed over the meaning of terms in the commentary that define when prior sentences may be considered "related" and simplified to promote consistency in the application of the guideline.  (1)  The Amendment eliminated the use of the term "related cases" at §4A1.2(a)(2) and instead uses the terms

-6-

"single" and "separate" sentences as follows:

(i).    If the prior sentences were for offenses that were <u>not</u>
        separated by an intervening arrest, the sentences are
        to be counted as separate unless the sentences were for
        (1)  Offenses that were named in the same charging document
        or
        (2)  Offenses that were imposed on the same day,
        (3)  In either of these situations, they are treated as a
             single sentence,
        (4)  It provides that in the case of a single sentence that
             comprises of multiple concurrent sentence of varying
             length, the longest sentence is to be used for purposes
             of applying subsection (a), (b) and (c) in the guideline.

    <u>Misdemeanor and Petty Offenses</u>:  The Amendment addresses the

use of misdemeanor and petty offenses in determining a defendant's

criminal history score, when they are counted in §4A1.2(c)(1) and

when they are not counted in §4A1.2(c)(2).  Based on the study,

the Commissioner responded to concerns that (1) some misdemeanor

and petty offenses counted under the guidelines involve conduct

that <u>is not</u> serious enough to warrant increased punishment upon

sentencing for a subsequent offense.  (2) the presence of a prior

misdemeanor or petty offense in a rare case can affect the sentence

in the instance offense in a way that is greatly disproportionate

to the seriousness of the prior offense (such as when such a prior

offense alone disqualifies a defendant from safety valve eligib-

ility) and (3) jurisdictional differences in defining misdemeanor

and petty offenses which can result in inconsistency in application

of criminal history points for substantially similar conduct.

The result made the Commissioner to make three modifications to

§4A1.2(c)(1) and (2).  First, the Amendment moves from §4A1.2(c)

(1) to §4A1.2(c)(2) the Fish and Game violation and local ordinance

violations.  Secondly, the Amendment changes the Probation

criteria as follows:

-7-

"...Offense listed at §4A1.2(c)(1) will be counted only if
(A) the sentence was a term of probation of <u>more than</u> one
year <u>or</u> a term of imprisonment of at least thirty days (30
days)
(B) the prior offense was similar to the instant offense."
[emphasis added]

The Commissioner states in its reason that those offenses
generally do not represent conducts criminalized under state laws
and they frequently receive minor sentences then.

The Amendment adopted the "common sense approach" first
articulated by the Fifth Circuit in <u>United States v. Hardeman,</u>
933 F 2d 278, 281 (5th Cir., 1991) which include consideration
of <u>all</u> relevant factors of similarity such as "punishment imposed
for the listed and unlisted offenses, the perceived seriousness
of the offense indicated by the level of culpability involved and
the degree to which the commission of the offense indicates a
likelihood of recurring criminal conduct. <u>Id</u>. See <u>United States
v. Martinez-Santos,</u> 184 F 3d 196, 205-206 (2nd Cir., 1999);
<u>United States v. Booker,</u> 71 F 3d 685, 689 (7th Cir., 1995).

The Commissioner received comments that some sentences of a
one-year term of probation constitute a default punishment
summarily imposed by the state sentencing authority, particularity
in those instances in which the probation imposed lacked a super-
vision component or was imposed in lieu of a fine.  The Commissioner
determined that prior misdemeanor and petty offenses that received
such a relatively minor default sentence <u>should not be counted</u>
for criminal history purposes.

Based on the above amendment/modification made retroactively
applicable to previously sentenced defendants, Petitioner
respectfully requests further reduction in her criminal history

-8-

points and category based on the following date from the PSI:

NOTE*** Answer the questions if applicable. If PSI is available attach the Criminal History Calculation as an Exhibit.

1. Do you have a multiple prior sentence? __XX_ Yes ___No ___N/A

2. Was there an intervening arrest? ____Yes ___No ___N/A

3. Was the Offense listed in the same changing document? ____Yes ____No ____N/A

4. Was the prior offenses consolidated for sentencing on the same day?
   __XX_ Yes ____No ____N/A

5. What type of sentence? Consecutive ___ Concurrent_XX_

   Based on Amendment 707, my multiple prior sentences should be consolidated and modified as "single" thus further reducing my criminal history category.from VI to III.

6. Did you receive points for your Petty Offense(s) and Misdemeanor?
   _xx_ Yes ____No ____N/A

7. Was your Petty Offense(s) and Misdemeanor that received (a) a Sentence of AT LEAST One Year Probation; (b) Unsupervised probation; less than 30 days served sentence, pursuant to Guideline §4A1.2(c)(1) counted in your Criminal History Score? _xx_ Yes ___No ___N/A (List, include the points--attach additional page if necessary)

8. Was your Non-Listed Offense(s) determined to be similar to an Offense listed at §4A1.1(c)(1) and (2) of the Guideline?
   ____Yes _|_No ___N/A

9. Total Criminal History Point(s)_6___ Category __VI__.

   Based on the above information Petitioner respectfully request Honorable Court to further reduce her Total Criminal History Points and Category From _6_ Points -- Category _VI_ to ___Points--Category _III_; and resentence her pursuant to the now-advisory guideline regime.as amendment 709 is a clarifying amendment and could be applied at sentencing.        -9-

## IV. <u>CONCLUSION</u>

For the foregoing and aforestated reasons, Petitioner herein respectfully requests this Honorable Court to apply the Advisory Sentencing Guidelines to the instant resentencing pursuant to 18 U.S.C. §3582(c)(2) proceedings. While this structure does not constitute full resentence their purpose is to give the defendant new sentences resulting in the judges calculting new Guideline range as the Booker court never suggested explicity or implicitly that the mandatory Guideline regime survived in any context. See <u>United States v. Booker,</u> 543 U.S. 220 (2005). 'Booker' was not a mere statutory change which can be set aside to allow a 'pick and choose' on the year a Petitioner is sentenced; rather it provides a Constitutional standard which courts may not ignore by making the Guidelines as advisory considering 18 U.S.C. §3553 (a) and imposing a sentence not greater than necessary in achieving the purpose of sentencing.

Petitioner, further prays that this Honorable Court will grant unto her such other and further relief as may be deemed fit and proper considering her post-offense rehabilitation efforts and extraordinary circumstances under U.S.S.C. §1B1.13. (See Attached Exh. "C"). (Amendment 697)

Respectfully Submitted,

Date: **1-11-08**

*Stephanie George*

Stephanie Y. George-Pro Se
# 04023-017
Federal Correctional Institution
501 Capital Circle, NE
Tallahassee, Florida  32301

-10-

1

Commentary to United States Sentencing Guidelines §5K1.1 Note
1 states that under circumstances set forth in 18 U.S.C. §3553(e)
and 28 U.S.C. §994(n), as amended, substantial assistance in the
Investigation or prosecution of another person who has committed
an offense may justify a sentence below a statutory required
minimum sentence.

2

Rule 35(b)(4) specifically states that:   "When acting under Rule
35(b), the court may reduce the sentence to a level below the
minimum established by statute..." therefore, Petitioner is
eligible for a further reduction of her sentence based on the
retroactive guideline amendment to crack cocaine and criminal
history.



EXHIBIT "A"

AO 245B (Rev. 3/95) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## Northern District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>**STEPHANIE YVETTE GEORGE** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987)<br>Case Number:  **3:96CR00078-002**<br><br>David G. White, Esquire |

**THE DEFENDANT:**                                   Defendant's Attorney

☐  pleaded guilty to count(s)

☐  pleaded nolo contendere to count(s)
    which was accepted by the court.

☒  was found guilty on count(s)   **I (2/13/97)**
    after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. ' 846 | Conspiracy to Possess with Intent to Distribute Cocaine Base | 08/16/1996 | I |

**CERTIFIED A TRUE COPY**
**ROBERT A. MOSSING, CLERK**

By: _____

Deputy Clerk

The defendant is sentenced as provided in pages 2 through   **6 '**   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☐  Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.:  **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** | **05/05/1997** |
| Defendant's Date of Birth:    **05/02/1970** | Date of Imposition of Judgment |
| Defendant's USM No.:    **04023-017** | |
| Defendant's Residence Address: | |
| **811 Massachusetts Avenue** | |
| | Signature of Judicial Officer |
| **Pensacola**              **FL**    **32505** | **ROGER VINSON**<br>United States District Judge |
| Defendant's Mailing Address: | Name & Title of Judicial Officer |
| **Massachusetts Avenue** | |
| **Pensacola**              **FL**    **32505** | Date |

**FOR THE NORTHERN DISTRICT OF FLORIDA**
**UNITED STATES v. STEPHANIE YVETTE GEORGE, DKT. #3:96CR00078-002**

PROBATION OFFICER NOTES ON FINDINGS AND DETERMINATIONS CONCERNING
CONTROVERTED MATTERS IN THE PRESENTENCE REPORT **[RULE 32(c)(1)]**:

At the sentencing hearing on **May 5, 1997**, the Court made the following findings and
determinations concerning controverted matters in this defendant's Presentence Report. Pursuant
to Rule 32(c)(1) of the Federal Rules of Criminal Procedure, the Probation Department is appending
these findings and determination to each copy of the Presentence Report, and has provided counsel
with copies to be appended to presentence reports in their possession.

_X_   The Court adopts the factual findings and guideline application in the Presentence Report.

OR

___   The Court adopts the factual findings and guideline application in the Presentence Report
except:

___   As to Paragraph(s) , the Court determined that no findings were necessary because the
controverted issues were not taken into account and did not affect the sentencing decision.

___   The Court made the following findings and/or determination on these issues, which were
raised for the first time at the sentencing hearing:

Guideline Range Determined by the Court:

Total Offense Level:            38

Criminal History Category:    VI

Imprisonment Range:          360 to Life

Supervised Release Range:    10 years

Fine Range:                  $25,000.00 to $8,000,000.00

Certified By:

Jeffrey M. Ishee
United States Probation Officer

JMI/jej

DEFENDANT:          STEPHANIE YVETTE GEORGE

CASE NUMBER:        3:96CR00078-002

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of     life     .

☒  The court makes the following recommendations to the Bureau of Prisons:

An institution as close as possible to Pensacola, Florida.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____ a.m./p.m. on _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

 

                                                   UNITED STATES MARSHAL

By _____

                                                Deputy U.S Marshal

DEFENDANT: STEPHANIE YVETTE GEORGE

CASE NUMBER: 3:96CR00078-002

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ___10___ year(s) .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

For offenses committed on or after September 13, 1994:

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

See Special Conditions of Supervision - Shee 3.01

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: **STEPHANIE YVETTE GEORGE**

CE NUMBER: 3:96CR00078-002

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | | Assessment | | Fine | | Restitution |
|---|---|---|---|---|---|---|
| Totals: | $ | 100.00 | $ | | $ | |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .    $ _____

### FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____.

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ The interest requirement is waived.

   ☐ The interest requirement is modified as follows:

### RESTITUTION

☐ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____. An Amended Judgment in a Criminal Case will be entered after such determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | | | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|---|---|
| | | | | | |

                                     Totals:    $ _____    $ _____

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

AO 245B (Rev. 3/95) Sheet 8 - Schedule of Payments 8 - Pennsylvania Case 3:96-cr-00078-RV-SMN Document 206 Filed 01/11/08 Page 18 of 27

Judgment-Page __5__ of __6__

DEFENDANT: STEPHANIE YVETTE GEORGE

CASE NUMBER: 3:96CR00078-002

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☒ in full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ not later than _____; or

D ☐ in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☐ in _____(e.g. equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

Judgment-Page  6   of   6

DEFENDANT:          STEPHANIE YVETTE GEORGE

E NUMBER:          3:96CR00078-002

## STATEMENT OF REASONS

☒  The court adopts the factual findings and guideline application in the presentence report.

**OR**

☐  The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

### Guideline Range Determined by the Court:

Total Offense Level:   |   38

Criminal History Category:   ____VI____

Imprisonment Range:  |   360   to   Life   ~~months~~

Supervised Release Range: _____ to   10   years

Fine Range: $   25,000.00   to $   8,000,000.00

☐  Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐  Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐  For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐  Partial restitution is ordered for the following reason(s):

☐  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

**OR**

☒  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

The statute requires mandatory life in this sentence.

**OR**

—  The sentence departs from the guideline range:

—  upon motion of the government, as a result of defendant's substantial assistance.

—  for the following specific reason(s):

```
  TALUC          *        INMATE EDUCATION DATA       *      11-06-2007
PAGE 001 OF 001  *             TRANSCRIPT             *       15:17:12

REGISTER NO: 04023-017    NAME..: GEORGE                FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: TAL-TALLAHASSEE FCI

--------------------------- EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP DATE/TIME
TAL  ESL HAS   ENGLISH PROFICIENT             06-17-1997 1530 CURRENT
TAL  GED HAS   COMPLETED GED OR HS DIPLOMA    07-15-1997 1357 CURRENT

--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION               START DATE  STOP DATE EVNT AC LV  HRS
TAL F    CERAMICS    M,W,TH,F 1800-2030 07-09-2007 CURRENT
TAL F    COLLEGE PREP MATH -TCC SPI    09-04-2007 CURRENT
TAL F    CERAMICS    M,W,TH,F 1800-2030 09-19-2006 12-04-2006   P   C   P    40
TAL F    MNA 2130 BUSINESS WRITING-CERT 01-11-2006 04-28-2006   C   C   P     0
TAL F    BUS MNGMNT CERTIF 24 HRS TCC   05-14-2002 04-28-2006   P   C   C   384
TAL F    MAN 2011 INTRO MNGMENT AS/CERT 08-30-2005 12-16-2005   C   C   P     0
TAL F    CROCHETING 1, MON 6-8 PM       12-07-2005 01-19-2006   P   C   P    40
TAL F    KNITTING THUR 6:30-8:30 PM     08-28-2005 01-19-2006   P   C   P    40
TAL F    CALL CNTR CLASS TWF 7:30-11    06-24-2005 08-18-2005   P   C   P    54
TAL F    ELECTRONICS VT 7:30-2:30 M-F   03-04-2005 06-29-2005   P   C   C   456
TAL F    RPP#6 ANGER MANAGEMENT GROUP 2 05-05-2005 05-19-2005   P   C   P     3
TAL F    RPP#6 ANGER MANAGEMENT GROUP 1 05-05-2005 05-19-2005   P   C   P     3
TAL F    RPP#6 WOMENS ISSUES "CONTROL"  04-28-2005 05-10-2005   P   C   P     3
TAL F    RPP6WOMENS ISS. RELATIONSHIPS  04-28-2005 05-10-2005   P   C   P     3
TAL F    RPP6 WOMENS ISS. FAMILY TRAPS  04-14-2005 04-18-2005   P   C   P     3
TAL F    RPP6WOMENS ISS. HEALTHY RELATI 04-14-2005 04-18-2005   P   C   P     3
TAL F    RPP6 WOMENS ISS.DRUG ABUSE     04-11-2005 04-11-2005   P   C   P     3
TAL F    RPP6 WOMENS ISS. DOM. VIOLENCE 04-11-2005 04-12-2005   P   C   P     3
TAL F    ACE COLLEGE PREP WRITING       11-06-2004 12-20-2004   P   C   P    24
TAL F    MAN 2011 INTRO MNGMENT AS/CERT 08-26-2004 12-09-2004   C   W   V     0
TAL F    RPP#1 WELLNESS ARTS SAT/SUN    10-29-2004 01-18-2005   P   C   P    40
TAL F    POS 1601 FOUND US CONST AS TCC 03-30-2004 09-02-2004   C   C   P     0
TAL F    RPP #6 LONG TERM SUPPORT GROUP 04-02-2004 06-18-2004   P   C   P    40
TAL F    GEB 1101 INTRO BUS AS/CERT     01-14-2003 04-28-2004   C   C   P     0
TAL F    MAN 2800 SM BUS MNGT-CERT      09-04-2003 12-11-2003   C   C   P     0
TAL F    BUL 2241 LGL CNCPTS BUS AS/CRT 05-21-2003 07-16-2003   C   C   P     0
TAL F    OST 1324 BUSINESS MATH-CERT    01-16-2003 04-24-2003   C   C   P     0
TAL F    MNA 2300 HUMAN RESRCE MGT-CERT 09-09-2002 12-09-2002   C   C   P     0
TAL F    RPP#3/CAREER-CONSUMER FIN/BUDG 08-07-2002 08-07-2002   P   C   P     1
TAL F    RPP#2/EMPLOY-SKILLS WORK HABIT 08-07-2002 08-07-2002   P   C   P     1
TAL F    RPP #4 CCC RULES & REGULATIONS 08-07-2002 08-07-2002   P   C   P     1
TAL F    RPP #4 USPO AND SUPERVISION    08-07-2002 08-07-2002   P   C   P     1
TAL F    RPP #5 RELEASE REQUIREMENTS    08-07-2002 08-07-2002   P   C   P     1
TAL F    MAR 2011 PRIN MARKETNG AS/CERT 05-14-2002 07-16-2002   C   C   P     0
DAN F    BLACK HISTORY 3 ACE            07-11-2000 10-24-2000   P   C   P    30
DAN F    PERSONAL GROWTH & DEVELOPMENT  07-01-1999 07-31-1999   P   C   P    20
DAN F    HIV EDUC AND TESTING HPDP/RPP  12-08-1998 01-07-1999   P   C   P     2
DAN F    COPE WITH INCARCERATION        11-19-1998 11-19-1998   P   C   P     1
TAL F    MONEY & BANKING-BUS ADMIN DEGR 05-11-1998 07-08-1998   P   C   P    45


G0000      TRANSACTION SUCCESSFULLY COMPLETED
```



# MANDATORY MINIMUMS: A NATIONAL DISGRACE

In 1986, anti-drug hysteria led Congress to pass legislation requiring stiff sentences for drug offenders. Twelve years later, it's clear that these unduly harsh laws have made a mockery of the criminal-justice system

BY WILLIAM GREIDER

**I. THE BODY COUNT** Some months ago, in a federal courtroom in Pensacola, Florida, another "girlfriend" case came up for sentencing on drug trafficking. Stephanie George, twenty-seven years old with three kids and two prior convictions in state court, was working as a hairdresser. She didn't sell on the street herself, but her boyfriend did. She was caught with his stash hidden in the attic of her home, nearly a kilo and a half of crack cocaine. ¶ George could not have chosen a worse place to get caught. The U.S. court district that covers the northern panhandle of Florida is the toughest jurisdiction in the nation – and proud of it. Pensacola's federal courts handed out the harshest sentences of any of the nation's ninety federal court districts in 1996, the most recent year for which figures are available. The median length of a sentence handed out in Pensacola for a drug conviction was 120 months; that means that half of the defendants who were found guilty got more than ten years. Pensacola is harsher than Los Angeles, Chicago or New York, where drug gangs flourish. Pensacola drug sentences are, on average, twice as stiff as those in Miami, where drug action is considerably heavier and more violent. And ten times as stiff as in Arizona, where the drug traffic is intense along the Mexican border.

"Our district has a reputation as the toughest in the country, and the judges think it's a good thing," explains Tom Keith, Pensacola's federal public defender. "The idea is to be hard. Be harder and harder. And judges take it very seriously here. They want to be the hardest in the country."

Even so, U.S. District Judge Roger Vinson thought a life sentence for Stephanie George was too much. But his hands were tied. The assistant U.S. attorney prosecuting the case refused to relent on the recommended term. Several years earlier, the judge was reminded, George had been convicted in state court, yet she returned to drug dealing. Under the rules devised by Congress, the "two priors" plus the quantity of drugs qualified her for the maximum.

"There's no question Ms. George deserves to be punished," Judge Vinson told the prosecutor. "The only question is whether it should be a mandatory life sentence. And . . . I wish I had another alternative."

Judge Vinson then addressed the defendant: "Even though you have been involved in drugs and drug dealing for a number of years . . . your role has basically been as a girl-friend and bag holder and money holder. So certainly, in my judgment, it doesn't warrant a life sentence." Then he sentenced her to life. He had no choice.

Stephanie George said nothing, but she wept quietly as she was led from the courtroom. Family members were stoical. Grandfather, mother, sister – they will raise her kids. "Life means life," as her court-appointed lawyer, David G. White, had ex-

plained. Parole has been abolished in the federal system, along with many other "be harder" measures adopted during the last fifteen years. A federal prisoner may hope to get fifteen percent shaved off the sentence for good behavior, but no more. A life term ends in death.

PUTTING STEPHANIE GEORGE AWAY FOR GOOD is a bipartisan achievement. The get-tough approach to drugs has been driven by public alarm over drug violence, but it was accomplished by fusing both liberal and conservative ideas on how to "reform" the criminal-justice system. Liberals had long advocated federal sentencing guidelines to eliminate the wide disparities and inequities that existed between sentences for similar offenses, from one federal court to another. Conservatives, meanwhile, were pushing for stiff mandatory sentences to get drug dealers off the streets – and to prevent any softhearted judges from turning them loose.



FORMER PROSECUTOR DAVID ZLOTNICK WAS SHOCKED BY HOW DRUG LAWS WORKED.

These two "reforms" were effectively merged by legislation enacted in 1984 and 1986, and, together, have produced some harsh and bizarre results. The new laws are embraced by both Democrats and Republicans, blessed by Reagan, Bush and Bill Clinton.

Let the punishment fit the crime. In place of the old flexibility, Congress created a steep ladder of mandatory-minimum penalties for peddling various illegal drugs and a few other selected crimes. Five years for the sale of 5 grams of crack, or 500 grams of powder cocaine, or 100 kilos of marijuana (or for growing 100 plants). Ten years for 50 grams of crack, 5 kilos of powder, 1,000 kilos of marijuana. If guns are involved – or various other conditions are met – sentences only get stiffer.

## NATIONAL AFFAIRS

The mandatory terms became the floor that pushes everything else up – interacting with the complex guidelines promulgated by the nine-member U.S. Sentencing Commission. Together, both measures take away the trial judge's ability to weigh the individual circumstances of the person being sentenced. The prosecutor effectively sets the sentence – even before the defendant goes before a judge – when he decides what level of offense to charge, whether to use the defendant as an informant, whether to accept mitigating facts that will allow the judge to reduce the sentence. If the prosecutor says be hard, the judge has very little choice in the matter.

IN ONE CRUDE SENSE, THE NEW system is working: The inmate population in federal prisons has mushroomed from 24,000 in 1980 to 102,000 last year. Sixty percent of them are in for drugs. Twenty-five years ago, when drug enforcement was mainly a state and local concern, federal prisons held fewer than 5,000 drug offenders. Now they hold 54,000 inmates convicted of drug-related crimes. Since most states have embraced a similar approach of tough mandatory minimums, they have their own burgeoning prison populations. State and federal prisons now hold 301,942 drug offenders in the fifty states.

Because the drug convicts are given much longer sentences, and because enforcement ranks are continually expanded, the federal prison system has doubled in size during the last nine years. The Justice Department's budget soared from $4 billion in 1986 to $21 billion for fiscal 1998 as the government hired more judges, prosecutors and investigators, as it built tens of thousands of new prison cells to hold the dealers, as it subsidized local police forces to catch more of them. This rapid escalation of costs is certain to continue – unless, of course, Americans should suddenly decide to stop buying and using illegal drugs.

As a practical matter, harsher sentences may be the most expensive and least effective way to reduce drug use. That is the conclusion of a cost-benefit study by Rand, the conservative think tank that does policy analysis for the Pentagon. Rand's Drug Policy Research Center calculated that every $1 million spent on extended sentences will reduce cocaine consumption by a modest 13 kilos. The same money spent treating drug addicts would re-

duce usage by 100 kilos. Mandatory minimums, the study summary said, "produce the smallest bang for the buck by far."

The dramatic byproduct, as we shall see, is the very opposite of the stern, uniform judicial system that the congressional authors had in mind. Because Congress shifted the discretionary sentencing power to the prosecutors, each U.S. attorney is more or less on his or her own – free to determine

what's necessary or fair. And the ninety U.S. attorneys have wildly different ideas of how these get-tough laws should be enforced.

The result is a national nightmare of random injustices and rank inequality before the law. The reality of federal drug enforcement constitutes a great and growing scandal, one that neither politicians nor the public wishes to acknowledge. Lawyers know it, judges know it, and so does

Stephanie George.

Her boyfriend, Michael Dickey, the crack dealer, also given a very long prison term, but he managed to cut a deal with the U.S. attorney by cooperating – informing on others; his sentence was set at twenty-six years. Stephanie didn't have any information to share. She will spend the next forty or fifty years – or however long she lives – in the Federal Correctional Institution at Tallahassee,



DRUG PRISONERS: STATE BY STATE 301,942 people are now serving time on drug convictions; 54,184 in federal prisons and 247,758 in state prisons. Mandatory minimums combined with rigorous enforcement have resulted in a 1,404 percent increase in the number of state prisoners since 1980, when there were 19,000. the numbers that follow represent the latest figures for adults and do not include juveniles still housed separately at the state level. (Source: Department of Corrections for each state.)

| STATE | PRISON POP. | DRUG OFFENDERS |
|---|---|---|
| Alabama | 22,383 | 3,435 |
| Alaska | 3,503 | 350 |
| Arizona | 23,656 | 3,977 |

ILLUSTRATION BY BRIAN CRONIN

## N A T I O N A L   A F F A I R S

### CASE HISTORY – KELLIE ANN MANN

Six years ago, Kellie Ann Mann was a promising college student in Santa Rosa, California, hoping to become an anthropologist when she graduated. She was living in California when Patrick, a former boyfriend in Atlanta, asked if she would mail him some LSD. Mann agreed, worried that if she didn't comply he would think she wasn't cool. But Mann was studious; she had no connections to the drug world. It took her more than a month to find someone who could sell her a few hits. Eventually she tracked down a supplier at a Grateful Dead concert. Mann bought the drugs and sent them off to Patrick.

Soon after, Atlanta police received a confidential tip, presumably from the seller, that drugs were being delivered to Patrick in the mail. Police officers watched for him to sign for the package and then arrested him on the spot. He soon turned in Kellie, who was arrested shortly thereafter for the first time in her life. Both Patrick and Kellie pleaded guilty to the charges. Prosecutors assured her that they would cut her sentence if she cooperated, but with little more knowledge of the drug world than what she saw on television, Kellie couldn't help them collar others.



*Kellie Ann Mann received ten years for mailing LSD to her boyfriend; he got less than three years.*

She was sentenced to ten years. Without mandatory minimums, Kellie would have received less than four. Patrick, on the other hand, helped indict other drug offenders and was sentenced to less than three years.

In recent years, Delaware Sen. Joe Biden has taken up Mann's case as an example of how mandatory-minimum laws keep people behind bars longer than necessary. With Biden's help, Mann's father pressed Congress to introduce a "safety valve" clause into federal crime legislation, allowing first-time offenders to avoid a mandatory-minimum sentence if they met stringent requirements. The bill passed but was not made retroactive, leaving Kellie's ten-year sentence intact.

"I try to hold onto my dreams," Kellie told a hometown reporter shortly after her sentencing. "But they get kind of clouded." —STEPHEN GLASS

full load prescribed by Congress, since they don't know anything. "Anyone facing ten years based on a small amount of drugs would love to cooperate with us," the former prosecutor explains. "But they couldn't flip even if they wanted to."

Zlotnick's tenure as a prosecutor coincided with the four years when mandatory minimums were relatively new and racking up big numbers for prosecutors. "Of course, the judges went nuts," he says. "We were flooding the federal courts with local street crimes."

One D.C. judge who reacted defiantly is Stanley Sporkin, among scores of federal judges across the country who are openly disgusted by the law's new rigidities. "We're applying these rules blindly and filling the jails with people who are in there for awful terms," Sporkin complains. "My prediction is, we're going to have to open up the jails someday and let these people out."

Sporkin occasionally finds reasons to reject prosecutors' decisions and reduce sentences, but he is also usually overturned by the conservative-dominated appeals court in Washington. "I had to sentence a guy to seven years who's a drug addict!" the judge exclaims. "He should have been sentenced to the Betty Ford clinic. It makes no sense to turn our jails into long-term-addict housing."

Undercover officers, Sporkin adds, made three separate buys from a small-time street dealer named Alvin Webb, in order to run up the quantity of drugs and thus qualify the forty-seven-year-old Army veteran for the mandatory term.

John Briley, a D.C. criminal-defense lawyer who has been appointed to represent dozens of indigent defendants, finds the supposed deterrent effect of tougher laws ludicrous, since most of his clients don't know what the law has in store for them. Few of his cli-

"Usually, the prosecutor's decision to use them as an informant and the defendant's decision to jump on the bandwagon are made before the defense attorney comes around. Frequently, the deal is put together even before the defense lawyer is appointed. Then they get a defense lawyer to go into court and cover it up. It's like selling a cow – we've made a deal on the cow, let's get a lawyer to transfer the title."

On rare occasions, like in the case of Tracey A. Hall, Briley attempts to challenge the police by claiming illegal search and seizure under the Fourth Amendment. Hall, a young woman with an IQ of seventy-six and the mental skills of an eight-year-old, was arrested at the D.C. bus station, delivering 125 grams of crack from New York for her boyfriend. Briley argued that she was not legally competent to grant voluntary consent when the police officer asked to search her bag. "These people figure if the cop says he



**U.S. DISTRICT JUDGE ROGER VINSON'S "HANDS WERE TIED" WHEN HE SENTENCED STEPHANIE GEORGE TO LIFE IMPRISONMENT.**

wants to search you, that's what he's going to do, no matter what you say," Briley says.

"Nobody would call her a threat to the community," he says. "She was just being used by other people." The judge rejected the claim. Tracey Hall is doing ten years.

The blitzkrieg approach to the War on Drugs eventually overwhelmed many prosecutors, too. The mandatory minimums simply generated too many cases, more than they could possibly handle. Little by little, the D.C. prosecutors backed away from the full terms of the law and, as a matter of office policy, began setting higher hurdles for what they would treat as a federal case. Rejected cases are sent to local courts, where sentences are much shorter.

---

Florida (at a cost to the federal government of about $21,000 a year).

WHITE HOUSE STAFFERS MAY object to intrusive tactics used to investigate President Clinton and Monica Lewinsky, but they seem to be unaware that on the other side of town, the feds routinely apply much nastier methods against poor people in drug cases and get much harsher results.

Drug addicts are sent away for six or seven years when their only profit from dealing may have been an occasional flake of crack. Those who commit violent crimes like assault or armed robbery draw less prison time than do low-level mules or street sellers. Defendants are "flipped" – that is, they become informants and head back to the street to trawl for more drug cases. Wired or videotaped, they must implicate others, sometimes even mom or dad, to win reduced sentences.

The Constitution requires that every accused person is entitled to legal defense, but in drug cases, prosecutors often decide the terms of "co-

---

WILLIAM GREIDER *examined the latest scandal surrounding the president in RS 782.*

operation" and punishment without consulting the defendant's lawyer or even before one is appointed by the court. Stephanie George seems to be an extreme example of how these laws work, but daily reality is not much prettier.

David Zlotnick, a Harvard Law School graduate who clerked for a federal judge, was shocked by the system he encountered as an assistant U.S. attorney in Washington, D.C. "It was truly amazing to see how violent crimes are handled – violent assault, armed robbery," he says. "You would get four to six years. For two sugar packets of crack, you'd get five years,

and we prosecuted any crack case that came along. We didn't care what the circumstances were."

Ironically, a drug dealer with rank in an organization can win a reduced sentence by offering to inform on associates, but marginal players get the

### "IF WE HAVE TWO DEFENDANTS WITH THE SAME CHARGE, WE WILL HAVE DISPARITIES," SAYS A DEFENSE LAWYER. "IT MAKES US INTO HORSE TRADERS AND MATHEMATICIANS."

ents go to trial, since the facts of their guilt are firm and the stakes of losing are so high. His own presence, Briley says, often only lends an appearance of "due process."

"Very few people insist they want to talk to a lawyer first," he explains.

---

| STATE | PRISON POP. | DRUG OFFENDERS | STATE | PRISON POP. | DRUG OFFENDERS | STATE | PRISON POP. | DRUG OFFENDERS | STATE | PRISON POP. | DRUG OFFENDERS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Arkansas | 9,056 | 1,817 | Connecticut | 15,580 | 3,484 | Florida | 64,713 | 10,332 | Idaho | 3,985 | 797 |
| California | 155,687 | 43,101 | Delaware | 5,500 | 1,886 | Georgia | 34,500 | 5,840 | Illinois | 9,849 | 2,332 |
| Colorado | 13,795 | 1,715 | District of Columbia | 8,218 | 2,498 | Hawaii | 4,240 | 574 | Indiana | 16,660 | 2,370 |



*Directory Assistance*

# CERTIFICATE OF GRADUATION

Awarded to

## STEPHANIE GEORGE

Presented by

**Excel** services

11/10/2005

**Date**

RegionalCall Center Manager

**David Johnson**

SW05

# CERTIFICATE OF SERVICE

This is to certify that I have served a true and correct copy of the foregoing,

```
"MOTION FOR MODIFICATION/REDUCTION OF SENTENCE"
```

upon the following addresses, by placing same in a sealed envelope, bearing sufficient postage

for the delivery via United States Mail Service to:

```
Clerk of the Court                    Office of the United States Attorney
226 United States Courthouse          21 East Garden Street
One North Palafox Street              Suite 400
Pensacola, Florida  32501-5525        Pensacola, Florida  32502
```

and deposited in the postal box provided for inmates on the grounds of the Federal Correctional

Institution Tallahassee, Florida 32301 on this ___11___ day of ___Jan___,

200&

Stephanie Y. George-Pro Se

Litigation is deemed FILED at the time it was delivered to prison authorities.

See: <u>Houston v. Lack</u>, 487 US 266, 101 L Ed 2d 245, 108 S Ct 2379 (1988).

TO:      THE HONORABLE CLERK OF COURT

      Attached herewith for filing with the Court is the Original
and one (1) copy of **PETITIONER'S MOTION FOR MODIFICATION OR
REDUCTION OF SENTENCE, PURSUANT TO 18 U.S.C. § 3582(c)(2)**.

      Please kindly date stamp the first/caption page and return
to me, in order that I may have a confirmed copy for my files and
records.

      Thank you for your courtesies in this matter.

                            Very truly yours,

DATE: 1-11-08

Stephanie George

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2008 JAN 11  PM 12: 59

Jmd

RECEIVED



FIRST CLASS

Clerk of the Court
290 North Palafox Street
Pensacola, FL 32501-5525

FCI Tallahassee, 501 Capital Circle N.E.
Tallahassee, Florida 32301

Date: 1-10-08

The enclosed letter was processed through
special mailing. The letter has been neither
opened or inspected. If the writer raises a
question or problem over which this facility
has jurisdiction, you may wish to return the
mail for further information or clarification. If
the writer enclosed correspondence for
forwarding to another addressee, please return
the enclosure to the above address.

Initials _____